**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **LUIS ROSAS DE BLAS,**<br><br>Petitioner,<br><br>v.<br><br>DAVID WESLING; ANTONE MONIZ; DAVID VENTURELLA; TODD BLANCHE; and MARKWAYNE MULLIN,<br><br>Respondents. | **Civil Action No. 1:26-cv-12697-BEM**<br><br>**MEMORANDUM IN SUPPORT OF PETITIONER'S MOTION TO ENFORCE JUDGMENT** |

## INTRODUCTION

The Court's June 22, 2026 Order did not promise Petitioner a hearing in name only. It held that he could be detained, if at all, under 8 U.S.C. § 1226(a), and ordered a bond hearing to consider the merits of release. ECF No. 11. Under controlling First Circuit law, that hearing could authorize continued detention for dangerousness only if DHS proved present danger by clear and convincing evidence. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 39–41 (1st Cir. 2021). The Immigration Judge recited that standard, but the written reasons show that it was not meaningfully applied.

The ruling depended on a police report marked "UNAPPROVED DRAFT" concerning charges later dismissed for failure to prosecute. Dismissal does not erase an allegation, and a police report is not categorically inadmissible. But admissibility is not sufficient weight. The submitted DHS packet contains no medical record, photograph, EMS report, signed witness statement, conviction, or adjudication resolving the conflict. The report itself records Petitioner's contemporaneous self-defense account and officer-observed scratches on his neck and chest. The written decision omitted both, treated the wife's failure to recant in a hardship letter as

affirmative support, and rejected all conditions in one conclusory sentence despite concrete state-court conditions and an offer of separate housing.

That is not the demanding whole-record analysis clear-and-convincing review requires. The result is especially untenable because the state court authorized conditional release, Petitioner had no prior criminal history, and years of employment, family, sponsor, church, and community evidence addressed present risk. The Court should enforce its judgment and order release. At minimum, it should require an immediate new hearing with express findings and a default-release remedy if the deadline is missed.

## BACKGROUND

### A. The June 22 Order and Final Judgment

ICE detained Petitioner on June 15, 2026, the day the Massachusetts charges in Chelsea District Court No. 2614CR000510 were dismissed for failure to prosecute. Petitioner sought habeas relief in this action. His reply requested the hearing *Hernandez-Lara* requires, with DHS bearing the burden on dangerousness. ECF No. 8 at 6.

On June 22, this Court granted the petition in part. ECF No. 11. It rejected mandatory detention under 8 U.S.C. § 1226(c), concluded that detention was governed by § 1226(a), found Petitioner "entitled to a bond hearing to consider the merits of his release," and ordered a hearing by June 26. Id. Final judgment was entered for Petitioner on July 6. ECF No. 12.

### B. The June 25 Bond Record

The hearing occurred on June 25 before Immigration Judge Kathryn Frames. Petitioner submitted the criminal docket and extensive favorable evidence. The public redacted record includes proof of stable housing and employment, family and community ties, a financially qualified sponsor offering separate housing and support, and letters from friends, relatives, an

employer, and a pastor. Ex. C. Those writers described years of reliable work, family support, church involvement, and no observed violent behavior. Petitioner had no conviction or prior criminal history.

DHS submitted an encounter summary, the Chelsea police report, and the state docket. Ex. D. The report is stamped "UNAPPROVED DRAFT." It describes competing accounts of a family dispute. Petitioner told police that his wife struck him first and that he pushed her in self-defense. The responding officer observed scratches on Petitioner's neck and chest, and the wife acknowledged scratching him. The wife alleged that Petitioner placed a hand around her neck, impaired her breathing, and dragged her by the hair. Her seven-year-old daughter repeated an account in her mother's presence. The report notes scratches and irritation near the wife's necklace. She was evaluated by emergency personnel but declined further medical attention and an emergency restraining order. Id.

The submitted DHS packet contains no photograph, medical record, EMS report, signed statement from the complainant or child, or adjudication of guilt. The written decision identifies no testimony from the complainant, the child, the officer, or another firsthand witness. The state docket records a preliminary dangerousness finding, but it also shows that the state court authorized release on $1,000 cash, GPS monitoring, no contact, a stay-away condition, and a residential exclusion zone. Ex. D. DHS's packet identifies no violation of those conditions before both charges were dismissed on June 15.

### C. The Written Decision

Written reasons were served on September 1, sixty-eight days after the hearing and after Petitioner had filed his bond appeal. Exs. B, E. The decision correctly stated that DHS bore the burden to establish dangerousness by clear and convincing evidence. Ex. B at B-004. It found the

report reliable and treated the accusation as corroborated by the child's reported account and by marks near the wife's neck. Id. at B-005–B-006.

But the decision did not acknowledge that the report was an unapproved draft, mention Petitioner's contemporaneous self-defense account, address his documented scratches, or explain how the limited observations resolved who initiated force or whether strangulation occurred. It reasoned that the wife had not recanted in either the report or a hardship letter. Id. at B-006. It listed some favorable equities, then stated without analysis that there was no amount of bond or alternative to detention that could mitigate dangerousness. Id. It did not identify or analyze the actual state-court conditions or the sponsor's separate-housing proposal.

### D. The Bond Appeal and This Court's Direction

Petitioner filed a bond appeal on July 14. Ex. E. The available status record lists the appeal as pending and the briefing fields as "N/A." Ex. F. Meanwhile, Petitioner remains detained under the ruling challenged here.

Petitioner later filed a new habeas action. On October 21, this Court denied that petition without prejudice. It explained that, notwithstanding the BIA appeal, Petitioner must proceed in this original action through "a motion to enforce the Court's judgment, explaining why he believes his June 25, 2026 bond hearing was constitutionally inadequate." Rosas de Blas v. Moniz, No. 1:26-cv-14723-BEM, ECF No. 8 (D. Mass. Oct. 21, 2026). Ex. A. This motion follows that instruction.

## ARGUMENT

### I. The Court Has Authority to Enforce Its Judgment, and the Pending Bond Appeal Is No Bar.

A federal court retains authority to interpret and enforce its own judgment. *Peacock v. Thomas*, 516 U.S. 349, 356 (1996). This Court has already identified enforcement as the correct

procedural vehicle. Ex. A. The issue is not whether this Court would exercise bond discretion differently. It is whether the hearing supplied as the remedy for unconstitutional detention actually provided the process required to make continued detention lawful.

Section 1226(e) does not bar review of a constitutional challenge to the procedures authorizing detention. *Hernandez-Lara*, 10 F.4th at 32–33. Nor must Petitioner wait for a bond appeal before invoking the judgment. The October 21 Order cited *Miti v. Moniz*, 827 F. Supp. 3d 206, 216–17 (D. Mass. 2026), which declined to require exhaustion where the detainee challenged the constitutional sufficiency of the hearing and ongoing detention caused irreparable liberty harm. Ex. A. Delay cannot be repaired after the fact: each day of physical confinement is lost liberty.

Recent enforcement decisions follow the same route. Miti examined whether the evidence actually carried the burden imposed by the habeas order and ordered relief when it did not. 827 F. Supp. 3d at 216–20. *Macas v. Moniz*, No. 1:26-cv-12524-JEK, ECF No. 19 (D. Mass. Oct. 29, 2026), likewise granted a motion to enforce and ordered release after an Immigration Judge found no bond or alternative appropriate. *Macas* did not decide the evidentiary-sufficiency issue presented here; it confirms the court's enforcement authority and the availability of release when the ordered process has not lawfully justified continued custody.

## II. Due Process Required DHS to Prove Present Dangerousness by Clear and Convincing Evidence.

*Hernandez-Lara* holds that due process requires DHS at a § 1226(a) bond hearing to prove dangerousness by clear and convincing evidence and flight risk by a preponderance. 10 F.4th at 39–41. The heightened burden allocates the risk of factual error away from the person whose physical liberty is at stake. Id. at 39–40. Clear and convincing proof must produce a firm

belief or conviction that the fact is highly probable; it requires materially more than a preponderance. *Miti*, 827 F. Supp. 3d at 217–18.

Reciting the correct formula is necessary but not sufficient. A reviewing court may ask whether the adjudicator actually applied the required burden to the complete record. Id. at 217–20. Otherwise the constitutional rule would turn on a label while permitting continued incarceration on evidence that does not meet the labeled standard.

Petitioner does not argue that an arrest report is categorically inadmissible or that dismissal establishes innocence. The First Circuit permits consideration of reliable, probative police records when their use is fundamentally fair. *Arias-Minaya v. Holder*, 779 F.3d 49, 54–55 (1st Cir. 2015). But it has also emphasized the established agency rule against giving substantial weight to an arrest report without a conviction or adequate corroboration of the allegations. *Rosa v. Garland*, 114 F.4th 1, 8–11, 17–18 (1st Cir. 2024); see *Maurice v. Bondi*, 154 F.4th 15, 22 (1st Cir. 2025); *Matter of Arreguin de Rodriguez*, 21 I. & N. Dec. 38, 42 (B.I.A. 1995). Admissibility, reliability, and ultimate evidentiary weight are distinct questions.

## III. The Written Decision Did Not Meaningfully Apply the Required Burden.

### A. The decision selectively treated a conflicting, unadjudicated report as dispositive.

The written decision repeated the inculpatory portions of the report, called it reliable and corroborated, and moved from the seriousness of the allegation to a finding of danger. Ex. B at B-005–B-006. It omitted material parts of the same report: Petitioner's immediate statement that his wife hit him first, his claim of a defensive push, the officer's observation of scratches on his neck and chest, and the wife's acknowledgment that she scratched him. Ex. D at D-008. Omitting directly contrary evidence is inconsistent with a whole-record determination that the accusation and present danger are highly probable.

The child's reported account and the marks near the wife's necklace provide some corroborative value, and Petitioner does not ignore them. But they do not resolve the central dispute. The child's account was relayed in her mother's presence. The report does not identify medical confirmation of strangulation, and DHS's packet contains no photograph, medical record, EMS report, or signed witness statement. The wife declined further medical care and an emergency restraining order. The report itself was marked "UNAPPROVED DRAFT." Taken together, these limitations bear on the weight the report can carry under a heightened standard.

The decision's reliance on the wife's failure to recant compounds the problem. A failure to recant in a letter offered to describe family hardship is not affirmative proof that every allegation is true. DHS bore the burden; Petitioner did not bear a burden to procure a recantation. Treating silence as corroboration shifted the practical risk of uncertainty to the detainee—the opposite of *Hernandez-Lara's* allocation.

*Miti* is instructive, though not identical. There, this Court held that dismissed domestic-assault allegations reflected in a police report did not satisfy clear-and-convincing review where the record contained competing accounts and contrary evidence. 827 F. Supp. 3d at 217–20. The report here notes marks near the wife's neck, a feature not present in precisely the same form in *Miti*. But that distinction does not end the analysis. This report also records injuries to Petitioner, his contemporaneous self-defense account, and no medical evidence establishing the cause or significance of the marks. Evidence that an altercation occurred does not by itself make strangulation, culpability, or present unmitigable danger highly probable.

**B. The ruling did not meaningfully weigh the favorable record or present danger.**

Dangerousness is forward-looking. Even if the report supported serious concern about a past incident, DHS still had to prove present danger under the heightened standard. The record

showed no conviction and no prior criminal history. Petitioner submitted stable employment, family and community ties, church involvement, a qualified sponsor, alternate housing, and letters from people who had known him for years and had not observed violent conduct. Ex. C. The decision listed selected favorable facts but did not explain why that extensive evidence failed to reduce present risk below the clear-and-convincing threshold.

The dismissal did not compel release, but it left the accusation without an adjudication of guilt. The state docket's preliminary danger notation also does not resolve the issue. The same state court authorized release with GPS, no contact, stay-away restrictions, a residential exclusion zone, and cash bail. Ex. D. Thus, the state record did not conclude that detention was the only means of protecting safety.

**C. The one-sentence rejection of every release condition was not individualized analysis.**

The decision declared that no bond or alternative could mitigate dangerousness but identified no alternative and supplied no explanation. Ex. B at B-006. The record contained concrete options tied to the asserted family risk: separate housing with a financially qualified sponsor; no-contact and stay-away conditions; electronic monitoring; reporting; third-party supervision; and a residential exclusion zone. Exs. C–D. The state court had already selected several of those terms.

*Hernandez-Lara* describes a hearing in which the Government must justify continued confinement under the proper burdens. 10 F.4th at 39–41. A bare assertion that no condition works, without engaging the conditions actually in the record, does not show that confinement was necessary. *Miti's* whole-record approach and *Macas's* enforcement remedy reinforce the need for a reasoned, individualized determination. At minimum, the unexplained alternatives ruling requires a new hearing.

**D. The deficiencies caused prejudice.**

If a separate prejudice showing is required, it is satisfied. See *Hernandez-Lara*, 10 F.4th at 47–48. Proper consideration of the omitted self-defense account, injuries to Petitioner, draft status of the report, lack of medical or sworn corroboration, clean history, years of favorable evidence, sponsor's separate residence, and actual state-court conditions could reasonably have changed the outcome. This is not harmless disagreement over wording. The omitted and unexplained matters go directly to whether DHS proved present, unmitigable danger at the required level of certainty.

**IV. Immediate Release Is the Appropriate Enforcement Remedy; Alternatively, the Court Should Require a Prompt New Hearing.**

The June 22 Order required a constitutionally adequate hearing by June 26. Nearly five months later, a deficient proceeding cannot be cured by leaving Petitioner confined while an unscheduled administrative appeal runs its course. *Miti* ordered release after concluding that the hearing did not justify continued detention under the court-ordered standard. 827 F. Supp. 3d at 219–20. *Macas* likewise confirms that release is within the enforcement court's remedial authority when implementation fails. No. 1:26-cv-12524-JEK, ECF No. 19.

The Court should order release within twenty-four hours on reasonable noncustodial terms and require a compliance notice. If the Court prefers renewed agency consideration, it should impose an immediate, self-executing remedy: a new § 1226(a) hearing within seven calendar days; DHS's *Hernandez-Lara* burdens; express findings addressing the full record, reliability, evidentiary weight, present risk, and each concrete alternative; a written decision within twenty-four hours; and release if any deadline is missed. The Court should retain jurisdiction until compliance is complete.

### V. If Procedurally Necessary, Limited Reopening Under Rule 60(b)(6) Is Timely and Warranted.

Enforcement should not require vacatur or alteration of the favorable judgment. Petitioner seeks the benefit of that judgment, not relief from its merits. If administrative closure or finality nevertheless requires reopening, Rule 60(b)(6) supplies a narrow procedural alternative. A subsection (6) motion must be made within a reasonable time. Fed. R. Civ. P. 60(c)(1). This motion comes less than five months after final judgment, promptly after the September 1 reasons exposed the constitutional defects and the October 21 Order identified enforcement as the proper route. It is timely.

The circumstances are extraordinary: physical liberty remains restrained; the judgment's effective relief depended on a constitutionally adequate hearing; and the agency appeal has not supplied prompt correction. See *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). The requested reopening is limited to deciding and supervising compliance with the relief already awarded. It does not introduce a new custody theory or seek to undo the favorable disposition.

## CONCLUSION

The Court should enforce ECF Nos. 11 and 12, find that the June 25 hearing did not meaningfully apply the constitutionally required burden, and order Petitioner released within twenty-four hours on reasonable noncustodial conditions. Alternatively, the Court should order an immediate new hearing under the safeguards and default-release terms set forth in Petitioner's proposed order. If necessary, the Court should reopen this action under Rule 60(b)(6) for that limited enforcement purpose and retain jurisdiction until Respondents comply.

Respectfully submitted,

**LUIS ROSAS DE BLAS**
By his attorney,

**/s/ Daniel T. Welch**
Daniel T. Welch, Esq. (BBO No. 714646)
WELCH GONZALEZ PLLC
100 State Street, 9th Floor
Boston, Massachusetts 02109
Telephone: (617) 302-6191
dwelch@welchgonzalezlaw.com

**CERTIFICATE OF SERVICE**

I certify that on November 10, 2026, this Memorandum was filed through the Court's CM/ECF system and served electronically on all registered participants.

**/s/ Daniel T. Welch**
Daniel T. Welch